**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| TOMMY HO,<br><br>          Plaintiff,<br><br>v.<br><br>MERRICK B. GARLAND, in his<br>official capacity as Attorney<br>General of the United States,<br>U.S. Department of Justice,[1]<br><br>          Defendant. | Civ. Action No. 20-912 (EGS) |

**MEMORANDUM OPINION**

I.     **Introduction**

Plaintiff Tommy Ho ("Mr. Ho" or "Plaintiff") brings this lawsuit against Merrick B. Garland, in his official capacity as Attorney General of the United States, U.S. Department of Justice (the "Government" or "Defendant"), alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, after Defendant reassigned Mr. Ho to the Joint Support Operations Center ("JSOC") and denied his transfer to the Las Vegas Field Office ("LVFO"). *See generally* Compl., ECF No. 1.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current Attorney General of the United States, Merrick Garland, is substituted as Defendant for the former Attorney General of the United States, William Barr. *See* Fed. R. Civ. P. 25(d).

Pending before the Court is Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. *See* Def.'s Mot. Dismiss or, in the Alternative, Mot. Summ. J., ECF No. 13; Mem. P. & A. Def.'s Mot. Dismiss or, in the Alternative, Mot. Summ. J. ("Def.'s Mot."), ECF No. 13-1. Mr. Ho opposes the motion and moves for discovery pursuant to Federal Rule of Civil Procedure 56(d). *See* Pl.'s Opp'n Def.'s Mot. Dismiss or, in the Alternative, Mot. Summ. J., ECF No. 16; Mem. P. & A. Pl.'s Opp'n Def.'s Mot. Dismiss or, in the Alternative, Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 16-1; Pl.'s Mot. Under Rule 56(d), ECF No. 17; Mem. P. & A. Pl.'s Mot. Under Rule 56(d) ("Pl.'s Mot."), ECF No. 17-1.

Upon consideration of the motions, oppositions, replies thereto, and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 13; and **GRANTS IN PART** and **DENIES IN PART** Mr. Ho's Motion Under Rule 56(d), ECF No. 17.

## II. Background

### A. Factual

Mr. Ho has worked for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since April 1999. Compl., ECF No. 1 at 3 ¶ 10. In August 2012, he accepted a position within

the Special Operations Division ("SOD"), Technical Operations Branch in the Unmanned Aircraft Systems ("UAS") Program at ATF Headquarters ("HQ"). *Id.* He had committed to that position for three years, *see id.*; but the SOD suspended the UAS Program in June 2014, *id.* at 3 ¶ 11. Mr. Ho was then involuntarily transferred to the Washington Field Division ("WFD"). *Id.* While at the WFD, he held the position of Senior Operations Officer ("SOO"). *Id.* at 3 ¶ 12.

### 1. Mr. Ho's Time at the WFD

While he worked at the WFD, Mr. Ho was supervised by Special Agent in Charge ("SAC") Smith ("SAC Smith" or "Mr. Smith"). *Id.* at 4 ¶ 15. Soon after he was involuntarily transferred to the WFD, Mr. Ho met with his supervisor. *Id.* at 4 ¶ 16. Mr. Smith spoke with Mr. Ho about his job responsibilities as a Senior Operations Officer. *See* T. Ho Dep. Tr. at 86:2-12.3. At some point, Mr. Smith turned the conversation to discuss his experience supervising another agent, Special Agent ("SA") Casey Xiong ("SA Xiong" or "Mr. Xiong"). *See* Compl., ECF No. 1 at 4 ¶ 16. Mr. Smith described Mr. Xiong "as good at administrative duties, but not as assertive as other agents." *Id.* Both Mr. Xiong and Mr. Ho are first-generation Asian immigrants who speak English as a second language. *Id.* Mr. Ho understood that Mr.

Smith "made this comparison between SA Xiong and Plaintiff based on their race, reflecting a stereotypical view of Asians." *Id.*

Several months later, in December 2014, Mr. Smith invited Mr. Ho and two other agents to join his family for dinner on Christmas Eve. *Id.* at 4 ¶ 17. Mr. Ho declined this invitation. *Id.* Mr. Smith commented on Mr. Ho's decision to not attend this dinner at least twice in the following weeks, stating "Tommy did not want to go to a [B]lack man's house." *Id.* Mr. Smith made these remarks in front of Mr. Ho and other WFD staff. *Id.*

### 2. Mr. Ho's Involuntary Transfer

On April 30, 2015, Mr. Ho was involuntarily transferred again—this time, to a GS-1811 SA/Project Officer position in the JSOC, in the Office of Strategic Intelligence and Information ("OSII")—effective May 17, 2015. *Id.* His new position was "clerical in nature," and his "primary responsibilities included answering phones and conducting history checks." *Id.* at 3 ¶ 13. For these reasons, Mr. Ho understood the JSOC to be "a punishment position" that one would not desire if he sought "to advance and gain experience in the agency." *Id.*

The transfer process began when Assistant Director ("AD") of Field Operations Michael Gleysteen ("AD Gleysteen" or "Mr. Gleysteen") and Deputy Assistant Director ("DAD") Marino Vidoli ("DAD Vidoli" or "Mr. Vidoli") contacted Acting DAD Essam Rabadi

("DAD Rabadi" or "Mr. Rabadi") to talk to the WFD about backfilling positions at the JSOC. *Id.* at 3 ¶ 14. Mr. Rabadi then contacted Mr. Smith "to provide him with the names of two 'candidates that fit the criteria for a transfer to the JSOC.'" *Id.* at 3-4 ¶ 14.

On April 22, 2015, Mr. Smith informed Mr. Ho about this direction from HQ. *Id.* at 4 ¶ 15. Mr. Smith claimed that HQ asked him "to select an agent who was assigned to the position of Division Tactical Advisor, Intel Officer, or Senior Operations Officer, or who was the subject of a pending internal affairs investigation" for transfer to the JSOC. *Id.* Seven agents, including Mr. Ho, met the criteria for transfer. *Id.*

According to AD McDermond ("Mr. McDermond"), agents are involuntarily transferred to the JSOC only "if there are no voluntary candidates for the position." *Id.* at 5 ¶ 22. At the time that Mr. Ho was transferred, one agent—SA Michael Jacobi ("SA Jacobi" or "Mr. Jacobi")—had volunteered to move to the JSOC. *Id.*

Additionally, agents who could be impeached while testifying in a criminal trial or who are unable to testify due to credibility concerns (i.e., *Giglio* issues) are transferred to HQ, including to the JSOC, until their conduct and credibility issues are resolved. *See id.* Mr. Vidoli identified Brent Price

("Mr. Price") as a candidate for transfer to the JSOC on the basis of this criteria. *Id.*

Mr. Smith forwarded one name—Mr. Ho—to HQ for transfer. *Id.* at 4 ¶ 15. On or about April 30, 2015, Mr. Gleysteen signed the selection memorandum transferring Mr. Ho to the JSOC. *Id.* at 5 ¶ 20.

### 3. EEO Proceedings and Denied Transfer

On June 1, 2015, Mr. Ho filed an informal equal employment opportunity ("EEO") complaint alleging race discrimination and reprisal. *Id.* at 5 ¶ 23.

On June 9, 2015, he met with his supervisors: Division Chief of the Violent Crime Intelligence Division Kevin O'Keefe ("Mr. O'Keefe"), Deputy Chief of the Criminal Intelligence Division Jose Vazquez ("Mr. Vazquez"), and Branch Chief of the JSOC Bryan Washington ("Mr. Washington"). *Id.* at 5-6 ¶ 24. During this meeting, he requested information about his reassignment to the JSOC. *Id.* He also discussed with his supervisors another reassignment—this time to an office in the San Francisco Field Division ("SFFD"). *Id.* at 6 ¶ 24. He specifically mentioned that he would like to return to the LVFO. *Id.* Mr. Ho was informed that this request would be discussed among upper management. *See id.*

On June 17, 2015, EEO Specialist Brenda Bryant ("Ms. Bryant") conducted Plaintiff's initial EEO interview. *Id.* at 6 ¶

25. In the days after this interview, Ms. Bryant contacted Mr. Washington about the EEO complaint, informing him of Mr. Ho's claims and desired return to the LVFO. *Id.* at 6 ¶ 26. Mr. Washington asked Ms. Bryant to direct all further questions about Mr. Ho to Mr. O'Keefe. *Id.* Still, he communicated this information to Mr. O'Keefe and Mr. Vazquez. *Id.* at 6 ¶ 27. Mr. O'Keefe told Mr. Washington "to stand by and wait for further instruction." *Id.*

Ms. Bryant also contacted Mr. O'Keefe about the EEO complaint, including the claims and requested relief. *Id.* at 6 ¶ 28. Mr. O'Keefe told Ms. Bryant that he would discuss reassigning Mr. Ho with Mr. McDermond, but they did not discuss resolution of the EEO complaint. *Id.* Mr. O'Keefe then separately notified Mr. Vazquez and Mr. Washington about the EEO complaint. *Id.* at 6 ¶ 29. Mr. O'Keefe also contacted Mr. McDermond about the same. *Id.*

Ms. Bryant conducted Mr. Ho's final EEO interview on July 28, 2015. *Id.* at 6 ¶ 30.

On August 14, 2015, Mr. Ho filed a formal EEO complaint. *Id.* at 6-7 ¶ 30. Ms. Bryant contacted Mr. O'Keefe in the following days to inform him of the formal EEO complaint. *Id.* at 7 ¶ 31. Mr. O'Keefe then notified Mr. Vazquez and Mr. Washington. *Id.* He then contacted Mr. McDermond, but he told the AD that "Plaintiff was contemplating filing an EEO complaint"

and that "he was trying to help Plaintiff resolve the matter so Plaintiff would not file a formal complaint." *Id.* at 7 ¶ 32.

Mr. O'Keefe and Mr. McDermond met several times in the coming days and discussed the status of Mr. Ho's reassignment. *Id.* at 7 ¶ 33. During one conversation, Mr. O'Keefe told Mr. McDermond that Mr. Ho would be transferred to the San Jose Field Office. *Id.*

Mr. Gleysteen informed DAD Luke Franey ("DAD Franey" or "Mr. Franey") of this transfer and asked for his help in the process. *See id.* at 7 ¶ 34. Mr. O'Keefe told Mr. McDermond that he would work with Mr. Franey and OSII Chief of Staff Ernest Hickson ("Mr. Hickson") to make the transfer. *Id.* at 7 ¶ 35. On August 20, 2015, Mr. Franey told Mr. Hickson that Mr. Ho could come to the San Jose Field Office and that Mr. Jacobi would replace him at the JSOC. *Id.* at 7 ¶ 36.

Mr. Washington informed Mr. Ho of the reassignment that same day. *Id.* at 7-8 ¶ 37. Mr. Ho immediately told Mr. Washington that he could not go to a California field office because his extensive firearms collection is prohibited in the state. *Id.* at 8 ¶ 37. Mr. Washington discussed with Mr. O'Keefe, who then contacted Mr. McDermond about the impossibility of a San Jose Field Office transfer and the possibility of a LVFO transfer. *See id.*

Mr. Franey agreed to pursue the LVFO transfer and informed Mr. O'Keefe, who advised Mr. McDermond and Mr. Washington. *Id.* at 8 ¶ 38. Mr. McDermond directed Mr. O'Keefe to continue with the transfer. *Id.*

On August 21, 2015, Mr. Vazquez and Mr. Washington asked Mr. Ho about the San Jose Field Office. *Id.* at 8 ¶ 40. Mr. Ho gave them the response that he gave to Mr. Washington earlier. *See id.*

Mr. Franey then contacted individuals at the SFFD about a possible LVFO transfer. *See id.* ¶ 41. No one had any objection to this proposal. *See id.* SFFD leadership agreed to the reassignment. *See id.* at 8-9 ¶ 42. On direction, Mr. Franey instructed the Field Operations Field Management Staff ("FMS") to initiate the Permanent Change of Station ("PCS") paperwork for Mr. Ho. *See id.* at 9 ¶ 43. Mr. Hickson then requested coordination such that Mr. Ho would go to the LVFO and Mr. Jacobi would go to the JSOC on the same dates. *See id.; see also id.* at 9 ¶ 46 ("Plaintiff and SA Jacobi had the same report date of November 29, 2015.").

Angela Iaquinta ("Ms. Iaquinta") was asked to prepare the reassignment and selection memorandum for Mr. Ho, which she did on or about August 24, 2015. *Id.* at 9 ¶¶ 43, 45. The PCS file included: a selection notice with a PCS funding stamp, emails about the above events, and a routing slip on the front of the

folder with initials and dates. *See id.* at 10 ¶ 48. She left the PCS file with Mr. Gleysteen's assistant, who then gave the paperwork to Mr. Gleysteen. *Id.* at 9 ¶ 45. In the meantime, Mr. Washington told Mr. Ho that his transfer to the LVFO had been approved. *Id.* at 9 ¶ 44.

Mr. Gleysteen received Mr. Jacobi's PCS file on August 24, 2015 and signed it on August 31, 2015. *Id.* at 9 ¶ 46. He signed the transmittal slip on September 8, 2015. *Id.*

Although he had already approved PCS funding for Mr. Ho's reassignment to the SFFD and for Mr. Jacobi's reassignment to the JSOC, Mr. Gleysteen denied Mr. Ho's reassignment. *See id.* at 9-10 at 47. Mr. Gleysteen also shredded Mr. Ho's PCS file, destroying the original and only copy of that paperwork. *Id.* at 10 ¶ 49.

Despite Mr. Gleysteen's actions, Mr. Washington told Mr. O'Keefe and Mr. Vazquez that Mr. Ho's PCS file was awaiting signature from Mr. Gleysteen. *Id.* at 10 ¶ 50. Several individuals in leadership discussed the status of Mr. Ho's transfer, and Mr. Ho also asked Mr. Washington to confirm his reporting date. *See id.* at 10 ¶ 51.

Ms. Iaquinta told Mr. Washington that the selection memorandum had not been signed on September 10, 2015. *Id.* at 10 ¶ 52. Mr. Washington and Mr. Vazquez each informed Mr. Ho that his paperwork was awaiting signature. *See id.* at 10 ¶¶ 52-53.

In the following days, Mr. O'Keefe told Mr. McDermond that
the reassignment was stalled and asked whether the EEO complaint
was a factor. *See id.* at 11 ¶ 55. Mr. McDermond explained that
Mr. Ho's reassignment "was tied to his EEO activity." *Id.* Mr.
O'Keefe consulted with agency counsel and concluded that the EEO
complaint was the reason for the stalled reassignment. *Id.*

Agency counsel later informed Mr. McDermond that Mr.
Gleysteen had denied Mr. Ho's reassignment to the LVFO. *Id.* at
11 ¶ 56. Mr. McDermond then talked to Mr. Gleysteen, who
informed him that "the only way he would authorize Plaintiff's
move to the LVFO was if Plaintiff signed a settlement agreement
resolving his EEO complaint." *Id.* at 11 ¶ 58.

Ms. Bryant contacted Mr. Ho about the possibility of
settlement on September 17, 2015. *Id.* at 11-12 ¶ 60. The next
day, she told Mr. Ho of Mr. Gleysteen's "ultimatum." *Id.* at 12 ¶
61. The Acting Deputy Chief of the EEO, Robyn Ferguson-Russ,
called Mr. Ho to tell him "that he would only be transferred to
the LVFO if he signed a settlement agreement and withdrew his
EEO complaint." *Id.* at 12 ¶ 62.

On or about September 20, 2015, Mr. Jacobi's transfer to
the JSOC was cancelled. *Id.* at 12 ¶ 63.

On or about September 25, 2015, agency counsel informed Mr.
O'Keefe and Mr. McDermond that Plaintiff was not willing to
settle his EEO complaint for a transfer to the LVFO. *See id.* at

12 ¶ 64. Mr. O'Keefe informed Mr. Vazquez and Mr. Washington, and Mr. McDermond told Mr. Gleysteen. *Id.* No one informed Mr. Ho that his transfer to the LVFO had been cancelled. *Id.* at 12 ¶ 65.

### B. Procedural

Mr. Ho filed this Complaint on April 6, 2020. *See generally* Compl., ECF No. 1. On July 23, 2020, Defendant filed its Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. *See generally* Def.'s Mot., ECF No. 13-1.

Plaintiff filed his Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on August 13, 2020. *See generally* Pl.'s Opp'n, ECF No. 16-1. Plaintiff thereafter filed a Motion Under Rule 56(d). *See generally* Pl.'s Mot. Under Rule 56(d), ECF No. 17.

Defendant filed its reply in support of the Motion to Dismiss on September 3, 2020, *see generally* Def.'s Reply in Supp. of Mot. Dismiss or, in the Alternative, Mot. Summ. J. ("Def.'s Reply"), ECF No. 19; and its opposition to Plaintiff's Motion Under Rule 56(d) on September 10, 2020, *see generally* Def.'s Opp'n Pl.'s Mot. Under Rule 56(d) ("Def.'s Opp'n"), ECF No. 21. Plaintiff filed his final reply on September 17, 2020. *See generally* Pl.'s Reply in Supp. of Mot. Under Rule 56(d) ("Pl.'s Reply"), ECF No. 23.

The motions are ripe and ready for adjudication.

### III. Standards of Review

### A. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While detailed factual allegations are not required, a complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When ruling on a Rule 12(b)(6) motion, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F. 3d 621, 624 (D.C. Cir. 1997). In so doing, the court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678.

## B. Motions Styled as Motions to Dismiss Or, in the Alternative, for Summary Judgment in Employment Discrimination Cases

Under Federal Rule of Civil Procedure 56, the movant's burden is to "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, "summary judgment ordinarily 'is proper only after the plaintiff has been given adequate time for discovery.'" *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)). "This is largely because, when faced with a motion for summary judgment, the non-movant must point to evidence in support of his opposition, and evidence is typically the province of discovery." *Tyson v. Brennan*, 306 F. Supp. 3d 365 (D.D.C. 2017) (citing *Rochon v. Lynch*, 139 F. Supp. 3d 394, 401 (D.D.C. 2015)). "Moreover, where a defendant has moved for summary judgment under Rule 56 as an alternative to dismissal under Rule 12(b)(6), 'the decision regarding whether or not to treat a motion to dismiss as one for summary judgment is committed to the sound discretion of the trial court[,] which means that this Court need not necessarily accede to [the defendant's] request regarding how its motion should be evaluated.'" *Id.* (quoting *Ross v. U.S. Capitol Police*, 195 F.

Supp. 3d 180, 192 (D.D.C. 2016)) (internal quotation marks and citation omitted) (first alteration in original).

### C. Rule 56(d) Motion for Discovery

Under Federal Rule of Civil Procedure 56(d), a non-moving party may ask the court to stay the consideration of summary judgment. A court may defer considering a motion for summary judgment, deny the motion, or allow time for the non-movant to take discovery if that party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The criteria of a Rule 56(d) declaration are that:

> (1) It must outline the particular facts the non-movant intends to discover and describe why those facts are necessary to the litigation, (2) it must explain why the non-movant could not produce the facts in opposition to the motion for summary judgment; and (3) it must show the information is in fact discoverable.

*U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26-27 (D.C. Cir. 2014) (citing *Convertino v. DOJ*, 684 F.3d 93, 99-100 (D.C. Cir. 2012)). A Rule 56(d) motion for discovery "should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Convertino*, 684 F.3d at 99.

IV.  **Analysis**

  A. **The Court Can Consider Portions of the Administrative
     Record Without Converting the Rule 12(b)(6) Motion to
     Dismiss to a Motion for Summary Judgment**

"While a court may not consider 'matters outside the
pleadings' in evaluating a motion to dismiss under Rule
12(b)(6) without converting the motion to one for summary
judgment under Rule 56, *see* Fed. R. Civ. P. 12(d); documents
that are referenced in, or an integral part of, the complaint
are deemed not 'outside the pleadings.'" *Peters v. Dist. of
Columbia*, 873 F. Supp. 2d 158, 179 (D.D.C. 2012) (quoting *Mead
v. Lindlaw*, 839 F.Supp.2d 66, 70 (D.D.C. 2012) ("In deciding
a Rule 12(b)(6) motion, a court may consider the facts alleged
in the complaint, documents attached as exhibits or incorporated
by reference in the complaint, or documents upon which the
plaintiff's complaint necessarily relies even if the document is
produced not by [the parties].") (internal quotations and
citations omitted)). "[A] document need not be mentioned by name
to be considered 'referred to' or 'incorporated by reference'
into the complaint." *Strumsky v. Wash. Post Co.*, 842 F. Supp. 2d
215, 218 (D.D.C. 2012) (internal citation omitted). "In ruling
on a motion to dismiss, the Court may consider not only the
facts alleged in the complaint, but also documents attached to
or incorporated by reference in the complaint and documents
attached to a motion to dismiss for which no party contests

authenticity." *Demissie v. Starbucks Corp. Off. & Headquarters,*
19 F. Supp. 3d 321, 324 (D.D.C. 2014). Here, Mr. Ho does not
dispute Defendant's argument that his "complaint relies heavily—
almost exclusively—on the administrative record in this matter."
*Compare* Def.'s Mot., ECF No. 13-1 at 22 n.6, *with* Pl.'s Opp'n,
ECF No. 16-1. Nor does he contest the authenticity of the
documents to which Defendant refers. *See generally* Pl.'s Opp'n,
ECF No. 16-1. Accordingly, the Court will consider the
administrative proceeding documents cited in this Memorandum
Opinion without converting the Motion to Dismiss to a Motion for
Summary Judgment.[2]

### B. Plaintiff Exhausted His Administrative Remedies

Defendant first argues that the Court should dismiss the
Complaint because Mr. Ho failed to exhaust his administrative
remedies. *See* Def.'s Mot., ECF No. 13-1 at 26-28; Def.'s Reply,
ECF No. 19 at 7-10. Citing persuasive authority, the Government
argues that Title VII complainants must participate in good
faith to exhaust their administrative remedies and that Mr. Ho
failed to do so because he rejected ATF's settlement offer—even
though that offer would have granted his requested relief to be
reassigned to the LVFO. *See* Def.'s Mot., ECF No. 13-1 at 26-27

---

[2] As discussed herein, Mr. Ho is entitled to certain additional
discovery on his discrimination claim under Fed. R. Civ. P.
56(f).

(citing *Wrenn v. Secretary, Dep't of Veterans Affairs*, 918 F.2d 1073, 1078 (2d Cir. 1990)). Mr. Ho does not dispute that Title VII imposes a good-faith requirement on complainants. *See generally* Pl.'s Opp'n, ECF No. 16-1. Rather, he contends that Defendant's offer did not constitute full relief and that rejection of a settlement offer is not a failure to exhaust. *Id.* at 14.[3] For the reasons that follow, the Court **DENIES** Defendant's Motion to Dismiss on this ground.

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-01 (1973). Congress "created the Equal Employment Opportunity Commission and established a procedure whereby . . . the Commission[] would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974). Consequently, "Title VII complainants must timely exhaust their administrative remedies before

---

[3] Mr. Ho also argues that the settlement offer was "retaliatory on its face." Pl.'s Opp'n, ECF No. 16-1 at 14. The Court addresses the issue of retaliation *infra*, as it is unnecessary to decide for Defendant's exhaustion claim.

bringing their claims to court." *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (alterations, citation, and internal quotation marks omitted). The government bears the burden of pleading and proving non-exhaustion as an affirmative defense, and only once it meets its burden does the burden shift to the plaintiff to "plead[] and prov[e] facts supporting equitable avoidance of the defense." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

Defendant argues that "[j]udicial elaboration of the exhaustion requirement has imposed an additional obligation of good faith participation in the administrative process on complainants who wish to bring civil actions." *Wrenn*, 918 F.2d at 1078 (citing *Munoz v. Aldridge*, 894 F.2d 1489, 1492 (5th Cir. 1990)). Although the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has not described the exhaustion requirement in such terms, the Second Circuit has explained that "it follows [from this requirement] that a claimant who is offered full relief in the administrative process must either accept the relief offered or abandon the claim." *Id.*

In *Wrenn*, the Second Circuit confronted for the first time the issue of whether a plaintiff bringing an employment discrimination claim may obtain relief in federal court after rejecting an offer of full relief during the administrative

proceedings. *See id.* at 1074. The court, along with the district court before it, concluded that the agency offered the plaintiff full relief because the offer contained the "basic components of 'make whole' relief in hiring discrimination cases." *Id.* at 1076 (collecting cases). The court then addressed the consequences of the plaintiff rejecting an offer of full relief. *Id.* at 1077. It determined that exhaustion must require good-faith participation in the administrative proceedings because there is a "legislative preference for voluntary conciliation." *Id.* at 1078. Further,

> To allow claimants . . . to continue to pursue claims that have been fully remedied during the administrative process would frustrate the congressional policy favoring administrative resolution of complaints for no discernible reason. Continued pursuit of such claims consumes judicial and other resources, resulting in a dead-weight social loss except for giving satisfaction to litigants who prefer court proceedings to administrative relief.

*Id.* at 1078-79. The court affirmed summary judgment for the defendants on that basis. *See id.* at 1076-79.

Even if the Court were to conclude that the *Wrenn* court's articulation of the exhaustion argument is persuasive, Defendant's reliance on *Wrenn* is misplaced because here, Defendant has not met its burden of pleading and proving that the settlement offer constituted full relief. *See Bowden*, 106 F.3d at 437. Rather than pointing to evidence in the

administrative record, Defendant relies entirely on the
Complaint to assert that Mr. Ho was offered the relief he had
requested in his administrative complaint—paid reassignment to
the LVFO. Def.'s Mot., ECF No. 13-1 at 27. Defendant has pointed
to no evidence from which the Court could conclude that the
settlement offered Mr. Ho "full relief" here. *Cf. Wrenn*, 918
F.2d at 1076 (noting that "[t]he settlement proposal included
the three basic components of 'make whole' relief in hiring
discrimination cases: a job offer, backpay, and retroactive
seniority").

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss
the Complaint for failure to exhaust administrative remedies.

### C. Mr. Ho Has Sufficiently Pled a Claim of Discrimination

The Government next moves to dismiss Count II of the
Complaint, which alleges race discrimination in violation of
Title VII. *See* Def.'s Mot., ECF No. 13-1 at 28-31; Def.'s Reply,
ECF No. 19 at 10-17. For the reasons below, the Court concludes
that Mr. Ho has stated a claim of race discrimination.

"Under Title VII, . . . the two essential elements of a
discrimination claim are that (i) the plaintiff suffered an
adverse employment action (ii) because of the plaintiff's race,
color, religion, sex, national origin, age, or disability."
*Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). In

cases where there is no direct evidence of discrimination, as
here, the plaintiff must proceed under the burden-shifting
framework from *McDonnell Douglas Corp.* and *Texas Department of
Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Jeffries
v. Barr*, 965 F.3d 843, 859 (D.C. Cir. 2020). The plaintiff first
must plead a *prima facie* case of discrimination, *see id.*;
specifically, he must establish that "[]he is part of a
protected class under Title VII, []he suffered a cognizable
adverse employment action, and the action gives rise to an
inference of discrimination," *Walker v. Johnson*, 798 F.3d 1085,
1091 (D.C. Cir. 2015). If he makes out a *prima facie* case, then
the burden shifts to the defendant to "'articulate some
legitimate, nondiscriminatory reason' for its action." *Jeffries*,
965 F.3d at 859 (quoting *Burdine*, 450 U.S. at 252-53). "Should
the employer carry its burden at the second step," the burden
shifts back to the plaintiff to "prove that the employer's
asserted reasons 'were not its true reasons, but were a pretext
for discrimination.'" *Id.* at 859-60 (quoting *Burdine*, 450 U.S.
at 253).

### 1. Plaintiff's *Prima Facie* Case

To begin, a plaintiff may survive a Rule 12(b)(6) motion to
dismiss without pleading all of the elements of a *prima facie*
case. *See Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir.
2014). "The prima facie case under *McDonnell Douglas* . . . is an

evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Still, the Court concludes that Mr. Ho had pled all of the elements of his *prima facie* case at this stage in the proceedings.

Defendant argues that Mr. Ho has not carried his burden at the first step.[4] First, the Government disputes that reassignment to the JSOC is an adverse employment action. *See* Def.'s Reply, ECF No. 19 at 14. It argues that, in the Complaint, Mr. Ho made "a single unsupported allegation that the Joint Support Operations Center 'is considered a punishment position and is a difficult to fill,'" *id.* (quoting Compl., ECF No. 1 at 3 ¶ 13); which is a "conclusory allegation[] not entitled to the assumption of truth," *id.* (citing *Iqbal*, 556 U.S. at 678-79). Defendant's argument ignores both controlling caselaw and other allegations in the Complaint. The D.C. Circuit has explained that "reassignment with significantly different responsibilities" is "conclusively presumed to be [an] adverse employment action[], even if any alleged harm is speculative." *Douglas v. Donovan*, 559 F.3d 549, 553 (D.C. Cir. 2009). Here, Mr. Ho alleged that his reassignment to the JSOC entailed significantly different responsibilities, specifically that

---

[4] Defendant does not contest that Mr. Ho is a member of a protected class under Title VII. *See* Def.'s Mot., ECF No. 13-1 at 6.

"[t]he JSOC SA position to which [he] was involuntarily reassigned is clerical in nature," and his "primary responsibilities included answering phones and conducting history checks." Compl., ECF No. 1 at 3 ¶ 13. Although there may be a dispute over whether the JSOC is a "punishment position," *see* Def.'s Reply, ECF No. 19 at 17 (citing Mr. O'Keefe's deposition transcript to explain that agents have volunteered for reassignment to the JSOC); Mr. Ho has met his pleading burden at this stage.

Second, the Government contends that Mr. Ho's allegations do not give rise to an inference of discrimination. *See* Def.'s Mot., ECF No. 13-1 at 28-31; Def.'s Reply, ECF No. 19 at 10-17. The Court begins by addressing Mr. Ho's allegations about SAC Smith's "history of racially charged statements." Pl.'s Opp'n, ECF No. 16-1 at 17. SAC Smith made the first of the two statements at issue in June 2014, shortly after Mr. Ho began his assignment at the WFD. *See* Compl., ECF No. 1 at 3 ¶ 11; *id.* at 4 ¶ 16. In this conversation, Mr. Smith discussed Mr. Ho's job responsibilities as a Senior Operations Officer at the WFD. *See* Def.'s Reply, ECF No. 19 at 11 (citing Def.'s Ex. 1 (T. Ho Dep. Tr.) at 86:2-12.3). Mr. Smith also talked about his experience supervising Mr. Ho two years earlier when they both worked in the SOD, *see* Def.'s Mot., ECF No. 13-1 at 7 (citing Def.'s Ex. 1 (T. Ho Dep. Tr.) at 90:9-11); and explained that, because of

24

that experience, "he knew the 'type of person [Plaintiff was]
and he had an idea of what to expect of [Plaintiff],'" *id.*
(quoting Def.'s Ex. 1 (T. Ho Dep. Tr.) at 90:9-22). Although he
already knew Mr. Ho in a supervisory capacity, *see id.*; Mr.
Smith turned the conversation to another man he had previously
supervised, SA Xiong, who had been a Division Operations Officer
at the Seattle Field Division, *see id.* (citing Def.'s Ex. 1 (T.
Ho Dep. Tr.) at 86:2-12). Mr. Xiong, like Mr. Ho, is a "first-
generation Asian immigrant[], with English as a second
language." Compl., ECF No. 1 at 4 ¶ 16. Mr. Smith "described SA
Xiong as good at administrative duties, but not as assertive as
other agents." *Id.* Mr. Ho alleges that "SAC Smith made this
comparison between SA Xiong and Plaintiff based on their race,
reflecting a stereotypical view of Asians." *Id.*

The second statement at issue came several months later. In
December 2014, Mr. Smith invited Mr. Ho and two other special
agents to join his family for dinner on Christmas Eve. *Id.* at 4
¶ 17. Mr. Ho declined the invitation. *See id.* In the following
weeks and in front of Mr. Ho and other WFD staff, Mr. Smith
commented that "Tommy did not want to go to a [B]lack man's
house." *Id.*

The Court concludes that Mr. Ho has pled adequate facts
from which it may draw an inference of discrimination. Speaking
at the summary judgment stage where the plaintiff alleging

discrimination must prove more than at the motion to dismiss

stage, the D.C. Circuit has held:

> Although we have found that an isolated race-
> based remark unrelated to the relevant
> employment decision could not, without more,
> permit a jury to infer discrimination, *see,
> e.g.*, *Waterhouse v. Dist. of Columbia*, 298
> F.3d 989, 996–97 (D.C. Cir. 2002), we have not
> categorically labeled such comments
> immaterial. To the contrary, we have found
> these types of statements to support a verdict
> for a Title VII plaintiff. *See, e.g.*, *Evans v.
> Sebelius*, 716 F.3d 617, 622–23 (D.C. Cir.
> 2013); *Talavera v. Shah*, 638 F.3d 303, 312–13
> (D.C. Cir. 2011); *Anderson v. Grp.
> Hospitalization, Inc.*, 820 F.2d 465, 472 (D.C.
> Cir. 1987); *see also Reeves v. Sanderson
> Plumbing Prods., Inc.*, 530 U.S. 133, 152–53
> (2000) (cautioning lower courts against
> discounting discriminatory statements "not
> made in the direct context" of the challenged
> employment action).

*Morris v. McCarthy*, 825 F.3d 658, 669–70 (D.C. Cir. 2016).

Defendant argues that Mr. Smith's statements are the "isolated"

remarks that cannot give rise to an inference of discrimination.

*See* Def.'s Mot., ECF No. 13-1 at 29-30; Def.'s Reply, ECF No. 19

at 11-14. But this argument minimizes Mr. Smith's words.

"Although it is true [these statements] will not always be

evidence of racial animus, it does not follow that [these

words], standing alone, [are] always benign." *Ash v. Tyson

Foods, Inc.*, 546 U.S. 454, 456 (2006) (per curiam). It is

plausible that these statements reflect stereotypical views of

Asians and Asian-Americans—namely, that they excel in

administrative positions and that they are racist against Black men. *See* Pl.'s Opp'n, ECF No. 16-1 at 22.

Nor is it fatal, as Defendant suggests, that Mr. Smith made these statements months before he forwarded Plaintiff's name for involuntary transfer to the JSOC. *See* Def.'s Mot., ECF No. 13-1 at 29-30; Def.'s Reply, ECF No. 19 at 13-14. Indeed, the D.C. Circuit has explained that "remarks made significantly before the relevant employment action" may "support a verdict for a Title VII plaintiff" and are "probative evidence of a supervisor's discriminatory attitude." *Morris*, 825 F.3d at 670. Thus, the Court considers these statements alongside "all other evidence [] to determine whether a plaintiff has met her burden." *Id.* As Defendant argues, "context matters." Def.'s Reply, ECF No. 19 at 13.

Here, Mr. Ho has alleged other facts to support an inference of discrimination. He alleges that Mr. Smith was directed to provide "the names of two 'candidates that fit the criteria for a transfer to the JSOC.'" Compl., ECF No. 1 at 4 ¶ 14. Seven agents, including Mr. Ho, met the criteria for transfer. *Id.* at 4 ¶ 15. Additionally, another agent—SA Jacobi— had volunteered for transfer to the JSOC. *Id.* at 5 ¶ 22. Agents are involuntarily transferred to the JSOC only if no agents volunteered for the transfer. *Id.* Even so, Mr. Smith forwarded Mr. Ho's name only, which resulted in the latter's involuntary

reassignment to the JSOC. *Id.* at 4 ¶ 15. Given these circumstances and Mr. Smith's statements, Mr. Ho has more support than the unsuccessful plaintiff Defendant cites in *McCleary-Evans v. Maryland Department of Transportation*, 780 F.3d 582 (4th Cir. 2015), whose "complaint offered nothing to support her conclusory assertions of discrimination beyond an unsubstantiated mention of 'a history of hires' within the division and statements identifying her race, the races of the two members of the hiring review panel, and the races of the two applicants hired for the positions." 780 F.3d at 584 (alterations and internal quotation marks omitted). Mr. Ho has submitted evidence of race-based remarks by his supervisor, which are substantiated in the evidentiary record, as well as circumstances around his involuntary transfer to the JSOC that make it reasonable to infer discrimination.

Accordingly, the Court concludes that Plaintiff has adequately pled his *prima facie* case of discrimination.

### 2. Defendant's Legitimate, Nondiscriminatory Reasons and Plaintiff's Case for Pretext

The parties do not dispute that Defendant has offered legitimate, nondiscriminatory reasons for Plaintiff's involuntary transfer to the JSOC. *See* Def.'s Mot., ECF No. 13-1 at 14-15; Pl.'s Opp'n, ECF No. 16-1 at 21-22; Def.'s Reply, ECF No. 19 at 30-31. Specifically, Defendant claims that ATF needed

to backfill positions at the JSOC and that SAC Smith selected
Mr. Ho because he met the qualifications for transfer. *See*
Def.'s Mot., ECF No. 13-1 at 30-31. The Court agrees that
Defendant has articulated legitimate reasons for the employment
decision. *See Burdine*, 450 U.S. at 254 ("The defendant need not
persuade the court that it was actually motivated by the
proffered reasons. It is sufficient if the defendant's evidence
raises a genuine issue of fact as to whether it discriminated
against the plaintiff.")

The Court therefore turns to Mr. Ho's argument that the
Government's "asserted reasons 'were not its true reasons, but
were a pretext for discrimination.'" *Jeffries*, 965 F.3d at 860
(quoting *Burdine*, 450 U.S. at 253). Mr. Ho makes four points to
support his argument about pretext: (1) Mr. Smith forwarded only
Plaintiff's name despite having been asked to send two names;
(2) Mr. Smith's history of race-based statements; (3) ATF's
practice of transferring to the JSOC agents with disciplinary or
conduct issues; and (4) ATF's practice of making involuntary
transfers to the JSOC only when there were voluntary candidates.
*See* Pl.'s Opp'n, ECF No. 16-1 at 21-22. In its reply briefing,
Defendant raises three points: (1) Plaintiff has not alleged
facts that Mr. Smith harbored racial animus against him; (2) one
of the agents Plaintiff identified—Mr. Price—was not a candidate
for reassignment by Mr. Smith; and (3) Mr. Jacobi was not a

candidate for reassignment by Mr. Smith. *See* Def.'s Reply, ECF No. 19 at 15-17.

The Court need not address Defendant's second argument, as it is repetitive of Defendant's earlier argument against the *prima facie* case and has been addressed *supra*. *See id.* at 16. Turning to Defendant's other points, the Court is similarly unpersuaded. In the Complaint, Mr. Ho alleges that "Brent Price was identified by DAD Vidoli as a potential candidate for the JSOC because he had *Giglio* issues." Compl., ECF No. 1 at 5 ¶ 22. Assuming *arguendo* that Mr. Price did have *Giglio* issues, *see* Def.'s Reply, ECF No. 19 at 16 n.6; Defendant argues that Mr. Price could not have been selected instead of Mr. Ho because Mr. Price worked at the Seattle Field Division and thus was not a candidate for Mr. Smith (at the WFD) to consider, *id.* at 16-17. Even if Defendant's contention is true, it does not explain why Mr. Vidoli would have named Mr. Price as a potential candidate for transfer to the JSOC. *See* Compl., ECF No. 1 at 5 ¶ 22. Nor does it dispose of Mr. Ho's general argument that other agents—namely, those with *Giglio* issues—are considered for transfer to the JSOC before other agents. *See id.* In fact, Defendant does not dispute that this practice exists. *See generally* Def.'s Reply, ECF No. 19; Def.'s Mot., ECF No. 13-1. Mr. Ho claims that the Government veered from its usual course due to Mr. Smith's discriminatory actions, and Defendant's argument about Mr. Price

30

at best creates a factual dispute about whether there were candidates with *Giglio* issues at the time of Mr. Ho's transfer.

Defendant makes a similar argument as to Mr. Jacobi, and the Court comes to the same conclusion. Mr. Ho alleges that Mr. Jacobi had volunteered for transfer to the JSOC and that "an agent is only involuntarily transferred to the JSOC if there are no voluntary candidates for the position." Compl., ECF No. 1 at 5 ¶ 22. Defendant argues that Mr. Smith could not have considered Mr. Jacobi for the reassignment because Mr. Smith supervises agents at the WFD and Mr. Jacobi, like Mr. Price, works at the Seattle Field Division. *See* Def.'s Reply, ECF No. 19 at 16-17. Given Mr. Ho's allegations that ATF takes voluntary transfers first and that Mr. Smith selected only one agent, Defendant does not offer enough to explain why Mr. Smith forwarded Mr. Ho's name for transfer at all. Moreover, Defendant undercuts its own argument by claiming that "ATF had not been required to involuntarily reassign any other agent because agents had always volunteered for the reassignment since around 2008." *Id.* at 17 (citation omitted). Defendant offers no explanation as to whether there were other volunteers in 2015, why there were no volunteers other than Mr. Jacobi, or why ATF failed to solicit more volunteers if needed. Left with these gaps, the Court concludes that Mr. Ho has stated a claim that ATF's reason for reassigning Mr. Ho to the JSOC was pretextual.

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss Count II of the Complaint alleging race discrimination in violation of Title VII.

### D. Mr. Ho Has Not Alleged a Plausible Claim of Retaliation

#### 1. The Settlement Offer Is Inadmissible

Defendant also moves to dismiss Count I of the Complaint, which alleges retaliation in violation of Title VII, arguing that Mr. Ho's allegations are based on inadmissible evidence of the settlement offer. *See* Def.'s Mot., ECF No. 13-1 at 31-34; Def.'s Reply, ECF No. 19 at 17-22.

Mr. Ho's retaliation claim is that "Defendant's conduct in denying Plaintiff's transfer to the LVFO absent his agreement to withdraw his EEO Complaint constitutes retaliation for engaging in protected activity." Compl., ECF No. 1 at 13 ¶ 70.

The Government argues that this "allegation[] cannot be used to state a plausible claim of retaliation" because pursuant to Federal Rule of Evidence 408(a), "evidence of [a settlement offer or settlement discussions] is not admissible—on behalf of any party—either to prove or disprove the validity[5] or amount of a disputed claim or to impeach by a prior inconsistent statement

---

[5] Validity encompasses liability. *See* Fed. R. Evid 408, adv. Comm. Note, 2011 Amend.

or a contradiction." Def.'s Mot., ECF No. 13-1 at 31 (citing Fed. R. Evid. 408(a)).

In response, Mr. Ho makes two arguments. First, he argues that his "retaliation claim is not based on inadmissible settlement discussions" because the basis for his retaliation count is that "[a]fter [he] filed his formal EEO complaint, AD Gleysteen denied [Mr. Ho's] request to transfer to the LVFO and shredded the original transfer paperwork, destroying evidence for which there are no copies." Pl.'s Opp'n, ECF No. 16-1 at 23 (citing Compl., ECF No. 1 at 10 ¶ 49).

Mr. Ho alleges that "[t]he paperwork for the transfer was on AD Gleysteen's desk when Plaintiff filed his formal complaint" and that "after Plaintiff filed his formal EEO complaint, AD Gleysteen denied Plaintiff's request to transfer to the LVFO and destroyed the original transfer paperwork."[6] *Id.* (citing Compl., ECF No. 1 at 10 ¶¶ 50, 49). However, this is not the basis of the retaliation count in the Complaint. *See* Compl.,

---

[6] The allegations in the Complaint do not support this argument. Rather, the Complaint alleges that Mr. Ho filed a formal EEO complaint on August 14, 2015, *see* Compl., ECF No. 1 at 6-7 ¶ 30; and that the paperwork did not reach AD Gleysteen's desk until sometime after August 24, 2015, *see id.* at 9 ¶¶ 43, 45. Furthermore, during the administrative proceedings, Mr. Ho failed to elicit any evidence demonstrating that Mr. Gleysteen's failure to approve the transfer to the LVFO was retaliatory because there is no evidence that Mr. Gleysteen knew about Mr. Ho's EEO activity when he declined to approve the transfer to the LVFO. *See* Gleysteen Dep., ECF No. 24-12 at 29:6-31:13; McDermond Dep., ECF No. 14-5 at 53:17-54:15.

ECF No. 1 at 13 ¶ 70. "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C 2000) (citation omitted).

Mr. Ho's **second argument is** that he can use the settlement discussions "for another purpose, such as proving a witness's bias or prejudice." Pl.'s Opp'n, ECF No. 16-1 at 23. He ties this use of the settlement discussions again to "Defendant's offer to reassign Plaintiff to the LVFO and subsequent recission of that offer," arguing that the settlement offer is being used to prove AD Gleysteen's bias or prejudice. *Id.* As explained above, however, Mr. Ho's retaliation count is not based on this incident, but on "Defendant's conduct in denying Plaintiff's transfer to the LVFO absent his agreement to withdraw his EEO Complaint constitutes retaliation for engaging in protected activity." Compl., ECF No. 1 at 13 ¶ 70.

Mr. Ho has provided no argument in support of his use of the settlement offer to prove that Defendant retaliated against him when it offered to transfer him to the LVFO so long as he withdrew his EEO complaint, which is Mr. Ho's retaliation allegation in the Complaint. *See* Pl.'s Opp'n, ECF No. 16-1 at 23-24. The evidence of the settlement offer is therefore inadmissible. *See* Fed. R. Evid. 408(a).

### 2. Mr. Ho Has Not Alleged a Plausible Retaliation Claim

Alternatively, Defendant argues that Mr. Ho cannot state a claim for retaliation based on the offer of approving the transfer to the LVFO in exchange for Mr. Ho withdrawing his EEO complaint. *See* Def.'s Mot., ECF No. 13-1 at 32-34.

Under Title VII, it is unlawful for an employer to: (1) "discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of [his] race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1); or (2) retaliate against any individual for participating in a protected activity, 42 U.S.C. § 2000e-3(a). To establish a *prima facie* claim of retaliation, the plaintiff must allege that he engaged in activity protected by Title VII, the employer took adverse action against him, and the employer took that action because of the employee's protected conduct. *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012).

In response, Mr. Ho again argues that he had stated a claim for retaliation both as a result of "Defendant's agreement to transfer him to the LVFO and subsequent abandonment of that agreement after learning that Plaintiff had filed a formal EEO complaint" and Defendant's settlement offer to transfer Mr. Ho only if he withdrew his complaint. Pl.'s Opp'n, ECF No. 16-1 at 25. The Court will disregard Mr. Ho's first argument because it

is not the retaliation count alleged in the Complaint and because Mr. Ho elicited no evidence to support the argument during the administrative proceedings. *See supra*. To the extent Mr. Ho argues that the settlement offer constituted an adverse employment action, the authority within this circuit upon which he relies provides no support for this argument. In *Rochon v. Gonzales*, the issue was whether the retaliatory action needs to be employment related to state a Title VII claim. 438 F.3d 1211, 1217 (D.C. Cir. 2006). There, the allegation was that the retaliatory conduct was the employer's refusal to investigate a death threat made against the plaintiff. *Id*. at 1219. Here, there is no question that the alleged retaliatory act was employment related. In *Ramos v. Lynch*, the Court found that summary judgment for the employer was premature because "[t]he information sought by plaintiff could show there was objective harm caused by the transfer—either direct, financial harm, or harm to plaintiff's prospects for advancement at the agency . . . ." 267 F. Supp. 3d 39, 47 (D.D.C. 2017). This provides no support for the proposition that conditioning the transfer to the LVFO in exchange for withdrawing his EEO complaint was an adverse employment action.

Mr. Ho has provided no support for his argument that the settlement offer constituted an adverse employment action and therefore has failed to state a plausible claim for retaliation.

*Cf. EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 452 (3d Cir. 2015) (finding that "denying an employee an unearned benefit on the basis of the employee's refusal to sign a release" is not an adverse employment action); *EEOC v. SunDance Rehab Corp.*, 466 F.3d 490, 499 (6th Cir. 2006) (holding that the offer of a separation agreement that included a charge-filing ban did not amount to retaliation).

For these reasons, the Court **GRANTS** Defendant's Motion to Dismiss Count I of the Complaint alleging retaliation in violation of Title VII and **DISMISSES** this Count.

### E. Plaintiff's Motion Under Rule 56(d)

Mr. Ho requests additional discovery beyond that which the parties conducted during the administrative proceedings. *See generally* Pl.'s Mot., ECF No. 17-1. His request is narrow, though, and his Motion Under Rule 56(d) outlines the five types of discovery he requests for his federal court case: (1) a deposition of SAC Smith; (2) a deposition of DAD Vidoli; (3) discovery of six agents Mr. Smith considered for transfer; (4) discovery of other agents who were involuntarily transferred to the JSOC between 2013 and 2016; and (5) discovery of Defendant's policies and guidance regarding PCS files and litigation holds. *See id.* Defendant opposes this request for discovery. *See generally* Def.'s Opp'n, ECF No. 21. The Government addresses

each of the five areas of discovery Plaintiff identified. *See id.* For the reasons explained below, the Court concludes that discovery is warranted in this case.

Under Rule 56(d), the Court may defer considering a motion for summary judgment, deny the motion, or allow time for the non-movant to take discovery if that party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Courts are generally reluctant to grant summary judgment "unless all parties have 'had a full opportunity to conduct discovery.'" *Convertino*, 684 F.3d at 99 (quoting *Anderson*, 477 U.S. at 257). For that reason, the D.C. Circuit has directed district courts to grant Rule 56(d) motions "'almost as a matter of course.'" *Id.* (quoting *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995)). This issue is particularly sensitive in employment discrimination cases; as the Supreme Court has explained, "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required *prima facie* case in a particular case." *Swierkiewicz*, 534 U.S. at 512.

A Rule 56(d) movant must: (1) "outline the particular facts movant intends to discover and describe why those facts are necessary to the litigation"; (2) "explain why the movant could not produce the facts in opposition to the motion for summary

judgment"; and (3) "show the information is in fact discoverable." *Convertino*, 684 F.3d at 94. As Defendant suggests in their briefing, *see* Def.'s Opp'n, ECF No. 21 at 7-8; "there is no reason why the de novo proceedings need duplicate the administrative record . . . and most de novo testimony would be in the nature of supplementation to that record." *Hackley v. Roudebush*, 520 F.2d 108, 150 (D.C. Cir. 1975). Still, the D.C. Circuit has instructed that "courts should focus on the employee's complaint" instead of "presuming that . . . the plaintiff must affirmatively establish his need for supplementation." *Id.* at 151.

Here, Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment was filed before discovery. *See generally* Docket for Civil Action No. 20-912. Mr. Ho, in responding to the Government's motion, has identified potential discovery needed to respond to this motion for summary judgment. *See generally* Pl.'s Mot., ECF No. 17-1. The Court reviews each area for discovery in turn.

### 1. Deposition of SAC Smith

Mr. Ho first requests that he be able to depose Mr. Smith. Pl.'s Mot., ECF No. 17-1 at 4. He argues that this deposition is relevant to his case because it will "show that Defendant's stated non-discriminatory reasons for the involuntarily transfer

were a pretext for discrimination." *Id.* He plans to elicit testimony regarding the following:

> 1) Smith's understanding of whether the JSOC is a punishment position; 2) Smith's racially charged statements to and about Plaintiff; 3) Information concerning other agents Smith transferred to the JSOC; 4) Whether those agents were applying to positions outside the Washington Field Division (WFD) when they were transferred; 5) Whether their transfer was voluntary; and 6) Whether Smith took into account the types of positions to which Plaintiff applied before involuntarily transferring him to the JSOC.

Pl.'s Reply, ECF No. 23 at 8. Defendant objects at length to this additional deposition. *See* Def.'s Opp'n, ECF No. 21 at 11-22. The Government argues that any relevant information has already been produced through Mr. Smith's EEO affidavit, Plaintiff's EEO affidavit, Plaintiff's EEO deposition, and Mr. Graves' EEO deposition. *See id.* at 12. Moreover, Defendant contends, "Plaintiff has failed to articulate why those facts are necessary to the litigation, why he could not produce those facts absent additional discovery, and that those facts are discoverable." *Id.* at 14.

The Court will permit Mr. Ho to depose Mr. Smith. Most significant is the fact that Mr. Ho never deposed his former supervisor during the administrative proceedings and has relied, thus far, only on Mr. Smith's EEO affidavit. *See* Pl.'s Mot., ECF No. 17-1 at 4. Despite Defendant's detailed arguments, because

of Mr. Smith's role, it is clear that his testimony will be necessary to Mr. Ho's claims. *See* Fed. R. Civ. P. 26(b)(1); *cf. Hackley*, 520 F.2d at 151 ("[T]he employee should have the right to conduct discovery and compel the attendance of witnesses to furnish additional evidence.").

### 2. Deposition of DAD Vidoli

Mr. Ho also requests a deposition of Mr. Vidoli. Pl.'s Mot., ECF No. 17-1 at 6. He argues that this testimony is relevant to a material fact—whether Mr. Vidoli directed Mr. Smith to provide one or two names for transfer to the JSOC. *See id.* In its opposition briefing, Defendant argues that this deposition is not needed because Mr. Rabadi, not Mr. Vidoli, communicated directly with Mr. Smith. Def.'s Opp'n, ECF No. 21 at 22-23. The Government adds that, though Mr. Ho possesses relevant information from Mr. Rabadi's EEO deposition as well as Mr. Vidoli and Mr. Smith's EEO affidavits, the issue of one or two names "does not matter to the outcome of this litigation." *Id.* at 23.

Because Mr. Ho's involuntary transfer to the JSOC is the adverse employment action for his discrimination claim, it is necessary for him to develop and ascertain facts about the circumstances of the transfer. Part of Mr. Ho's theory is that Mr. Smith decided to transfer only Mr. Ho even though Mr. Vidoli requested two transfers. *See* Compl., ECF No. 1 at 3-4 ¶¶ 14-15.

Further, the Court does not find this request to be cumulative or duplicative, as Mr. Vidoli has never been deposed. The Court therefore will allow Mr. Ho to depose Mr. Vidoli.

### 3. Discovery of Six Other Agents Considered for Transfer

Mr. Ho contends that he needs discovery related to the six agents Mr. Smith considered for transfer to the JSOC: Samuel Katz, Jeffrey Meixner, Anthony Rather, Gary Styers, Vendarryl Jenkins, and Marjorie Noel. Pl.'s Mot., ECF No. 17-1 at 6. He explains that he "needs to obtain additional evidence about the potential comparators' job titles and duties as well as whether they met the criteria for transfer." *Id.* (citing *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004)). Defendant opposes this request, arguing that the information is not relevant because "[t]he issue . . . is not why Smith *did not* select the other agents, but why Smith selected Plaintiff." Def.'s Opp'n, ECF No. 21 at 24. Moreover, the Government adds, Plaintiff has already discovered information about these six agents. *See id.* at 25-26.

Mr. Ho already has information about these six agents' job titles and duties, *see id.*; and so the Court denies Plaintiff's request for discovery on those topics, *see Townsend v. Mabus*, 736 F. Supp. 2d 250, 253 (D.D.C. 2010) ("That the Court's review of plaintiff's claims is *de novo* does not, as plaintiff appears

to claim, entitle her to discovery duplicative of that which is already in the record." (citing *Hackley*, 520 F.2d at 150)).

Mr. Ho also requests information about "whether [the six agents] met the criteria for transfer." Pl.'s Mot., ECF No. 17-1 at 6. Defendant points to some evidence in the administrative record, such as performance appraisals. *See* Def.'s Opp'n, ECF No. 21 at 25-26. To the extent that Mr. Ho seeks discovery of other information about these agents related to the criteria for transfer but not in the administrative record, the Court permits further discovery. This information is necessary to respond to the question of whether other agents would have been suitable for transfer and therefore to the question of why Mr. Ho was selected rather than another agent. This is enough to clear the *Convertino* hurdle.

### 4. Discovery of Other Agents Involuntarily Transferred to the JSOC

Mr. Ho argues that he requires discovery about the other agents who were involuntarily transferred to the JSOC between 2013 and 2016. *See* Pl.'s Mot., ECF No. 17-1 at 7.[7] He claims that

---

[7] "At a minimum, Plaintiff seeks their: 1) names; 2) job titles and duties; and 3) race and national origin. Plaintiff also needs to know whether: 1) the agents had any disciplinary issues, e.g. Giglio issues; 2) they volunteered for the transfer to the JSOC; 3) the agents faced any barriers to upward mobility after transferring to the JSOC; and 4) the agents were actively seeking to be reassigned to a different division prior to joining the JSOC." Affidavit of Avni J. Amin, ECF No. 17-3 at 3 ¶ 12.

this information is necessary "[t]o prove Defendant's non-discriminatory reasons for involuntarily transferring Plaintiff to the JSOC are pretextual." Pl.'s Mot., ECF No. 17-1 at 7. In its opposition briefing, Defendant contends that this information is irrelevant, will not create an issue of material fact, and is duplicative of discovery already conducted at the administrative level.[8] *See* Def.'s Opp'n, ECF No. 21 at 26-27.

This evidence is relevant to the case. The details of other agents' involuntary transfers are relevant to the question of whether other similarly situated agents were involuntarily transferred to the JSOC. Answers to this question may illuminate whether Defendant's reasons for transferring Mr. Smith instead of other agents are pretextual. *Cf. Cruz v. McAleenan*, 931 F.3d 1186, 1192 (D.C. Cir. 2019) ("'[C]omparative information concerning an employer's treatment of [protected groups] is relevant evidence in an individual discrimination claim against that employer. Such evidence can be used . . . to show that the employer's stated reasons for the challenged actions are a pretext for discrimination.'" (quoting *Minority Employees at*

---

[8] Defendant identifies two passages in a single deposition as the discovery already produced in the case. *See* Def.'s Opp'n, ECF No. 21 at 27 (citing Mr. O'Keefe's deposition transcript). The Court does not address this deposition because, as Plaintiff describes in his motion and affidavit, this discovery request involves specific data not covered in those passages.

*NASA v. Beggs*, 723 F.2d 958, 962 (D.C. Cir. 1983) (per curiam))).

Further, this request is proportional to the needs of the litigation. "[T]ransfers are not everyday occurrences," Pl.'s Reply, ECF No. 23 at 16; and so Plaintiff requires discovery over the course of years, rather than months, to conduct his inquiry. Looking at transfers from both before and after Mr. Ho's transfer may reveal information about ATF's contemporary practices. And because Mr. Ho has identified the data points he needs from this discovery, the Court concludes that this request is limited and proportional to the needs of the case.

### 5. Discovery of Defendant's Policies on PCS Files and Litigation Holds

Mr. Ho claims that he needs additional information about any litigation hold and "Defendant's guidance, policies, and procedures concerning the types of documents and information that would ordinarily comprise a PCS file" because AD Gleysteen destroyed the only copy of his PCS file. Pl.'s Mot., ECF No. 17-1 at 8. He explains that this evidence is relevant to his retaliation claim. *Id.* at 9. Defendant opposes this request, reasoning in part that Mr. Ho has already discovered this information. *See* Def.'s Opp'n, ECF No. 21 at 28. The Court has dismissed Mr. Ho's retaliation claim, and so this request is **DENIED**.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Mr. Ho's Motion Under Rule 56(d).

**F. Conclusion**

For the foregoing reasons, it is hereby ordered that Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 13, is **GRANTED IN PART** and **DENIED IN PART**; and it is further ordered that Mr. Ho's Motion Under Rule 56(d), ECF No. 17, is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**September 17, 2022**